UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

J.A., ex rel., T.L. and C.A., her natural
parents and guardians,

        Plaintiffs,

v.

Moorhead Public Schools, ISD No. 152,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-4639 ADM/LIB

___

Margaret O'Sullivan Kane, Esq., Kane Education Law, LLC, St. Paul, MN, on behalf of Plaintiffs.

Jenny Gassman-Pines, Esq., Greene Espel PLLP, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On January 12, 2015, the undersigned United States District Judge heard oral argument on Moorhead Public Schools, ISD No. 152's ("Moorhead" or "the School") Motion to Dismiss [Docket No. 31]. Plaintiff J.A., ex rel., T.L. and C.A. ("J.A." or "Plaintiff") opposes the motion. For the reasons set forth below, Moorhead's motion is granted.

## II. BACKGROUND

J.A. is a five-year-old girl who was diagnosed with Down syndrome in infancy. Am. Compl. [Docket No. 3] ¶ 18. She is currently unable to directly communicate through words and instead relies on word and sound imitation and a limited series of signs to communicate. Id. ¶ 19.

J.A. attends Robert Asp Elementary in Moorhead, Minnesota. Id. at ¶ 18. She receives special education and related services under an individualized education program ("IEP"). Id.

Her condition requires her to receive individualized assistance with academics and peer interactions.  Id. ¶ 19.  J.A. receives direct educational services for 50 minutes each day from a special education teacher.  Id.  J.A. also has sessions with an occupational therapist for 20 minutes bi-weekly, a speech language therapist for 20 minutes four times per week, and a physical therapist for 20 minutes three times per week.  Id.

Her IEP allows J.A. to be taken out of the mainstream classroom for special education that can be taught with intention and focus.  Compl. [Docket No. 1] Attach. 3.  The IEP directs that J.A. is to be in the mainstream classroom with her peers for the remainder of the day.  Am. Compl. ¶ 19.  In addition to an IEP, J.A. has a Behavior Intervention Plan ("BIP").  Compl. Attach. 4.  J.A.'s BIP states that she works best in a distraction free setting and references her occasional need for sensory breaks and quiet places to recover from overstimulation.  Id. at 2, 6, 7.

**A.  Parent-Teacher Conferences**

Parent-teacher conferences were held on October 13, 2014.  Am. Compl. ¶ 20.  During the conferences, J.A.'s mother was given a tour of J.A.'s classrooms.  Id.  At this time, J.A.'s mother learned that the School was using a small, narrow room as J.A.'s quiet room.  Id. ¶¶ 21, 22.  The room is a windowless storage closet that is lined with filing cabinets and secured by a heavy, windowless door.  Id. ¶ 22.  It is alleged that the room is not ventilated, heated, or kept clean and does not comply with required fire and safety codes.  Id.  It is further alleged that the door was not connected to the automatic fire alarm and suppression system.  Id.

Upon viewing the room, J.A.'s mother became upset and immediately left the school to speak with J.A.'s father.  Id. ¶ 23.  Both parents returned later that day to speak with principal

Christopher Triggs and to take pictures of the room in question. Id. Because Triggs was unavailable at that time, the parents returned the following day to speak with him. Id. ¶¶ 23, 24. Triggs asserted that the room had previously been used for other special needs students and that it was being used because construction projects had limited available space. Id. ¶ 24. At the conclusion of the meeting, J.A.'s parents stated they did not intend to return J.A. to school. Id. In response, Triggs scheduled a meeting between J.A.'s mother, a Moorhead special education coordinator, and himself. Id. ¶ 25.

The following evening, on October 15, 2014, J.A.'s mother met with Triggs and Pat Sullivan, the special education coordinator. Id. ¶ 26. J.A.'s mother reiterated her intention of withholding J.A. from school. Id. Triggs responded that it was against the law to keep J.A. from her education; however, Triggs and Sullivan allowed J.A. to remain home for one week, until October 22, 2014. Id. Also, Triggs agreed to make some personnel changes and stated that the School would cease using the room for J.A. as another classroom had been located. Id. Despite the stated promises, J.A.'s mother remained reluctant to return J.A. to school. Id.

However, J.A. did return to the School as planned on October 22, 2014. Id. ¶ 28. At this time, J.A.'s parents sought the advice of counsel, who advised them of compulsory attendance requirements and recommended that J.A. not be returned to the School until the use of the room was completely discontinued. Id. Accordingly, J.A.'s parents removed her from school on October 31, 2014. Id.

**B. Procedural Posture**

This suit was initiated on November 3, 2014 and the three count Amended Complaint was filed the following day. The Amended Complaint asserts claims under two federal statutes,

the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), and one state statute, the Minnesota Human Rights Act ("MHRA"). On November 4, 2014, J.A. sought a Temporary Restraining Order and Preliminary Injunction [Docker No. 11] to enjoin the School's use of the room for J.A. and all others similarly situated. In opposition, the School informed the Court that subsequent discussions and meetings between the School and J.A.'s parents had occurred. As a result of these meetings, the School agreed to refrain from using the room for J.A. for any purpose.

On November 20, 2014, the Court heard argument on J.A.'s motion for emergency injunctive relief. At the hearing, counsel for the School, acting as an agent and with binding authority, orally committed the School on the record to honor its agreement to refrain from using the room at issue for J.A. for any purpose. On November 25, 2014, an Order [Docket No. 30] was entered denying J.A.'s motion on the ground that the relief J.A. sought had already been obtained.

The School now moves to dismiss J.A.'s Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### III. DISCUSSION

**A. Legal Standard**

A motion to dismiss for lack of subject matter jurisdiction may challenge the complaint either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). Here, the School is challenging the Amended Complaint on its face.

When deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the pleadings, a court must accept the claimant's factual

allegations as true and view them in the light most favorable to the non-movant. Great Rivers Habitat Alliance v. FEMA, 615 F.3d 985, 988 (8th Cir. 2010). The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The court must ensure it has subject matter jurisdiction before proceeding. Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009). While generally, matters outside the pleadings are to be ignored, a court may consider materials that are necessarily embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1080 (8th Cir. 1999) (internal quotation marks omitted).

**B. Subject Matter Jurisdiction**

The School asserts that the Court does not have subject matter jurisdiction over J.A.'s claims because she failed to exhaust her administrative remedies before filing her Complaint. The School bases its jurisdictional argument on the exhaustion of remedies requirement of the Individuals with Disabilities Education Act ("IDEA"). While an IDEA claim is not explicitly pled, the School argues that J.A. is nevertheless required to first proceed through the IDEA's administrative process because the claims J.A. asserts stem directly from her right to a free, appropriate public education ("FAPE") and some of the remedies she seeks are available through the IDEA. In response, J.A. argues that the claims she asserts are disability discrimination claims that do not implicate the IDEA. If the IDEA is implicated, J.A. argues that administrative exhaustion is still not required because her claims sound in comparable facilities and integration mandates that are beyond the reach of the IDEA.

Title II of the ADA and Section 504 of the Rehabilitation Act ("Section 504") do not include an exhaustion of remedies requirement. A.P. ex rel. Peterson v. Anoka-Hennepin Indep.

Sch. Dist. No. 11, 538 F.Supp.2d 1125, 1152 (D. Minn. 2008).  Neither does the MHRA.  St. Martin v. City of St. Paul, 680 F.3d 1027, 1034 (8th Cir. 2012).  The IDEA's exhaustion requirement can be implicated, however, when claims brought under the ADA and the Rehabilitation Act are related to claims under the IDEA that are subjected to the antecedent requirement.  Id.  The same is true for MHRA claims.  I.E.C. v. Minneapolis Public Schs., Special Sch. Dist. No. 1, -- F. Supp. --, Nos. 12-2398, 12-2997, 2014 WL 3629830, *9-10 (July 22, 2014).

The IDEA's exhaustion requirement prevents "litigants from circumventing the [IDEA's] procedural requirements by bringing a related claim under a different Federal statute."  Mobury v. Indep. Sch. Dist. No. 696 (Ely), 951 F.Supp. 867, 888 (D. Minn. 1996).  The IDEA states, in relevant part:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).  Claims that are not "wholly unrelated to the IEP process" must first pass through the IDEA's administrative exhaustion procedure  See M.P. ex rel. K. and D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn., 439 F.3d 865, 868 (8th Cir. 2006).  The M.P. court concluded that "The School District's alleged failure to protect [a student] from unlawful discrimination on the basis of his disability is a claim that is wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement, and [FAPE]

decisions." Id.

Here, J.A.'s claims are not "wholly unrelated to the IEP process" and the IDEA's exhaustion requirement must first be satisfied before filing suit. This conclusion was reached in a very similar case, A.C. v. Indep. Sch. Dist. No. 152, where a non-verbal autistic student with a BIP and IEP was placed in a "small, windowless room" labeled as "storage." No. 06-3099, 2006 WL 3227768, *1 (D. Minn. Nov. 7, 2006). While the essence of the plaintiff's 13-count complaint involved "Fourth Amendment claims related to the injuries [the plaintiff] sustained as a direct result of being confined to room 208 for long periods of time" the plaintiff asserted Section 504 and ADA claims. Id. These claims were dismissed for failure to exhaust administrative remedies because the court determined they were IDEA-related. Id. The A.C. court concluded that the other claims for false imprisonment, negligent confinement, and Fourth and Fourteenth Amendment violations relating solely to the plaintiff's confinement were not IDEA related and therefore no exhaustion was required. Id.[1]

J.A. alleges discrimination occurred by her being placed in a room that was not equal to the classroom provided to her non-disabled peers. However, J.A.'s IEP and BIP both state that J.A. functions best with limited stimulation and a quiet time or break should be provided if she appears to be overstimulated. See Compl. Attach. 3, 4. Additionally, her BIP contemplates a "sensory break" and states that she will be taken or pulled out of the general education setting "when she is learning skills that require limited or no distractions." Id. Attach. 4. These claims,

---

[1] The specific non-IDEA claims are not provided in the A.C. opinion; the claims are referred to by count number. The specific claims were obtained by matching up the count numbers in the opinion to the count numbers in the Complaint. See Compl. A.C., No. 06-3099 [Docket No. 1] 10-18.

unlike the false imprisonment and constitutional violations in A.C., are premised on J.A.'s right to "individual identification, evaluation, educational placement, and [FAPE]" and thus are related to the IEP process implicating the IDEA's exhaustion requirement. M.P., 439 F.3d at 868.

J.A. nevertheless contends that the IDEA's "educational placement" consideration does not include the location of services. Thus, J.A. argues that a challenge to the location of education services is outside the reach of the IDEA and administrative exhaustion is therefore not required prior to filing suit. Essentially, J.A. argues that exhaustion is inappropriate because the IDEA does not provide an appropriate remedy.[2] J.A.'s argument is unconvincing.

First, in Hale ex rel. Hale v. Poplar Bluffs R-I Sch. Dist., the Eighth Circuit addressed the IDEA's "stay put" provision and noted that whether a change in location was a change in educational placement depended on the motivations behind the change. 280 F.3d 831, 833-34 (8th Cir. 2002). Changes in location made on the account of the disabled student or their behavior, as opposed to fiscal or other concerns unrelated to the student, were usually deemed to be changes in educational placement. Id. at 834. The authority cited by J.A. does not rebut the notion that provisions in the IDEA may address changes in location.

Second, the Eighth Circuit has held that where some of the relief plaintiffs seek is available under the IDEA, the inadequate remedy exception to the administrative exhaustion requirement does not apply. J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 595 (8th Cir. 2013). J.A. seeks broad equitable and compensatory relief, some of which is available under the IDEA. See id. at 593-94 (noting that compensatory education, reimbursement for

---

[2] A remedy which the School has already agreed to provide.

private educational services, and attorney's fees are available through the IDEA).

Finally, the policy motivations behind the IDEA's detailed administrative exhaustion requirement are broad. See S.A.S. ex re. W.S. v. Hibbing Pub. Schs., No. 04-3204, 2005 WL 1593011, *2 (D. Minn. July 1, 2005) (citing Ass'n for Retarded Citizens of Ala., Inc. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987)). J.A.'s claims do not permit her to circumvent this explicit policy directive.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 31] is **GRANTED**.

The case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction based on Plaintiffs' failure to exhaust their administrative remedies.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 23, 2015.